UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| JONATHAN T. DEAL, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| *v.* | ) | No.1:03-cv-385 |
| | ) | *Edgar* |
| POLK COUNTY, TENNESSEE, | ) | |
| SHERIFF BILL DAVIS, POLK COUNTY | ) | |
| SHERIFF, DETECTIVE JAMES T. | ) | |
| BURRIS, POLK DEPUTY SHERIFF, | ) | |
| CARL BROWNE, POLK COUNTY | ) | |
| DEPUTY, BOB COPELAND, JAIL | ) | |
| ADMINISTRATOR, CHRIS LANE, | ) | |
| POLK COUNTY JAIL INMATE, | ) | |
| JERRY QUARLES, POLK COUNTY | ) | |
| JAIL INMATE, FREDDIE STRATTON, | ) | |
| POLK COUNTY JAIL INMATE | ) | |
| | ) | |
| *Defendants.* | ) | |

**MEMORANDUM**

Plaintiff Jonathan T. Deal brings this civil rights action against Defendants Polk County,

Tennessee, Sheriff Bill Davis, Deputy Sheriff James T. Burris, Deputy Carl Browne, and Bob

Copeland, jail administrator, (collectively "Defendants") pursuant to 42 U.S.C. § 1983 ("Section

1983"), 42 U.S.C. § 1985 ("Section 1985"), and 18 U.S.C. § 245. Plaintiff also raises various

state law claims, including claims for assault, battery, and negligence. In addition to bringing

claims against Defendants, Plaintiff states claims against former Polk County jail inmates, Jerry

Quarles, Chris Lane, and Freddie Stratton.

Defendants Polk County, Sheriff Davis, Deputy Sheriff Burris, Deputy Browne, and Mr.

Copeland move for summary judgment. [Court Doc. No. 31]. Plaintiff opposes the motion.

[Court Doc. No. 40]. The Court has reviewed the record and the arguments made by the parties.

For the reasons expressed *infra*, the Court will **GRANT** Defendants' motion for summary judgment in its entirety with respect to Defendants Polk County, Sheriff Davis, and Mr. Copeland. The Court will **GRANT** Defendants' motion for summary judgment with respect to Plaintiff's claims against Deputy Sheriff Burris and Deputy Carl Browne pursuant to Section 1985 and 18 U.S.C. § 245 and Plaintiff's state law claims. The Court will **DENY** Defendants' motion for summary judgment with respect to Plaintiff's claims against Deputy Sheriff Burris and Deputy Carl Browne pursuant to Section 1983. The Court will **DISMISS WITHOUT PREJUDICE** Plaintiff's state law claims against all Defendants.

## I.     Background

The facts are difficult to discern in this action because the evidence in the record, such as medical records, providing support for the timing, nature, and extent of Plaintiff's alleged injuries is lacking. In addition, although the parties appear to agree that Plaintiff was injured to some extent by inmates while held at the Polk County jail, the parties vigorously dispute the events leading up to and following Plaintiff's injuries. Taken in the light most favorable to Plaintiff, the facts are as follows.

A Polk County criminal complaint indicates that on May 31, 2003 Polk County police filled out a criminal complaint against Plaintiff for striking his aunt and beating her head on the floor until she lost consciousness. [Court Doc. No. 31-5]. The criminal complaint alleges that Plaintiff threatened to kill his aunt for "telling bad things on him to his girlfriend." *Id.* Deputy Sheriff Burris signed the affidavit of complaint. *Id.*

The parties dispute what happened after police obtained a warrant for Plaintiff's arrest for aggravated assault on June 4, 2003. In response to an interrogatory, Plaintiff describes the

events following his arrest. [Court Doc. No. 40-2]. In his interrogatory response, signed under oath, Plaintiff alleges that on the morning of June 4th Sheriff Davis, Deputy Sheriff Burris, and another officer entered Plaintiff's home and arrested him. Deputy Sheriff Burris escorted Plaintiff to Sheriff Davis' patrol car in handcuffs, and Plaintiff alleges that on the way to the car, Burris said, "You just wait boy you're going to get your ass beat." *Id.*

Plaintiff further alleges that police placed him in the "drunk tank cell" for an unknown period of time that Plaintiff estimates was perhaps two to three hours. *Id.* Following this time period, police removed Plaintiff from this holding area and obtained fingerprints and a picture.

Defendant Browne then placed Plaintiff into a larger cell with approximately ten to twelve other inmates or pre-trial detainees. Following Plaintiff's attempt to use a phone that was in the cell, Plaintiff alleges that Defendant Stratton told him, "Don't you know why you were sent back here? James Burris sent you back here to have your ass beat. Are you ready for round one?" *Id.* Plaintiff asserts that Stratton proceeded to beat him about his face and body and that Defendants Lane and Quarles joined in to the fray.

Plaintiff alleges that following the beating, Deputy Browne "stepped in grinning, asking [him] if everything was alright." *Id.* Plaintiff describes the events that followed in his interrogatory response:

> My mouth was hanging open and I was bleeding pretty bad. I could hardly breathe or talk. I didn't say anything and Mr. Browne left. The other inmates asked if they called him back would I say I fell in the shower and I said, "yes." So they yelled for Mr. Browne and he came back there and took me out of the 10 man cell and put me back in the drunk tank. I begged him to help me. I had blood all over my orange uniform. I sat in the drunk tank for hours. I begged and begged for someone to help me. . . . Finally, after it seemed like hours Carl Browne came and got me and took me to the hospital. At the hospital, they ran me through the tunnel taking X-rays and all of that. They gave me a shot for pain and a prescription for pain medication. I was taken back to the jail that night

without getting my prescription filled. My family came to the jail that night about midnight and got my prescription filled.

On Thursday morning June 5, I was taken to Dr. Hoop's office. I believe then [sic] back to the hospital where Dr. Hoops put me to sleep and wired my mouth shut. I was taken back to the jail where I stayed for the next few days without bond. My mother supplied all my medication and nutrition drinks because I had to eat through a straw for the next 3 months. Polk County supplied nothing that the doctor had said I needed. My mother supplied it all.

[Court Doc. No. 40-2].

In addition to his interrogatory response, Plaintiff relies on an affidavit from Steve Murray, a former jailor at the Polk County Jail. [Court Doc. No. 40-3, Murray Affidavit]. Mr. Murray's affidavit appears to support many of Plaintiff's allegations. He alleges that as he was preparing to leave, "Carl Browne, deputy, came up bragging that James Burris had told him in front of all them to talk to those boys in the back and make sure that Jonathan Deal got a good (blank) kicking." *Id.* at ¶ 3. Deputy Browne allegedly informed Mr. Murray that he was just following Deputy Sheriff Burris' orders. Mr. Murray alleges:

When I came back in I saw them bringing Jonathan Deal up the hallway. He was busted up bad. Blood pouring down his face [sic]. They were going to put him in the drunk tank. I told Bob Copeland, the jail administrator this man's going to have to go [sic] the doctor or hospital. Bob Copeland asked what are you talking about and went and looked at Jonathan Deal. I followed Bob Copeland and he said, "He ain't going to the doctor or hospital. I was told by the Sheriff and Burris that no matter what happened to Deal back there he was absolutely positively not to go to the hospital." I said that's pretty (blank) up. Send a man back intentionally to get him beaten up and when he gets his jaw broke not even let him go to the doctor. Bob Copeland confirmed again that Jonathan Deal was not to go to the doctor. . . . The next day when I told the Sheriff during our conversation about what happened and when I told him that was said that his name was used by the jail administrator and that he was told by the Sheriff and James Burris he was not to be taken to the hospital no matter what happened, the Sheriff's response was, "Yes, I did tell him that, but I must have been misunderstood. What I meant was that if he tried to commit suicide or fake something to get out, in other words, if he tried to convince them he was crazy, or that he was going to kill his self just to get out of jail that he was not to go to the doctor for that. I didn't mean and hope no one would take it or interpret it that I

wanted this man beat up and then refused medical care."

*Id.* at ¶¶ 8-12, 28.

In addition to his claims regarding his injuries, Plaintiff alleges an additional claim against Sheriff Davis for unlawfully excluding him from his home. Plaintiff alleges that after his mother helped him to post bond, Sheriff Davis prevented him from leaving the jail and that he had to wait two additional days before he obtained a hearing from Judge Baillils. [Court Doc. No. 40-2]. Plaintiff alleges that the judge informed him that "as a condition of [his] bond [he] was given 2 hours to board up [his] home, pack [his] clothes and leave the county." *Id.* He alleges he was banned from Polk County. *Id.*

The parties do not appear to dispute that several inmates and/or pre-trial detainees injured Plaintiff severely, requiring him to go to the hospital and incur medical expenses. Plaintiff's complaint alleges that the incident involving the three inmates resulted in both sides of his jaw being broken, along with other injuries. [Court Doc. No. 1, ¶ 22]. However, the parties dispute whether Defendants Burris and Browne ordered the inmates deliberately to injure Plaintiff. Sheriff Davis provides an affidavit indicating that he never authorized any inmate to injure Plaintiff and that Plaintiff was not denied medical care. [Court Doc. No. 31-2]. Defendants Burris and Browne also provide affidavits indicating that they never authorized any individuals to use force against Plaintiff. [Court Doc. Nos. 31-3, Burris Affidavit; 31-4, Browne Affidavit].

The Defendants also dispute whether Plaintiff received medical treatment promptly. Deputy Sheriff Burris asserts that Plaintiff received medical treatment within twenty minutes of his request for care. Burris Affidavit, ¶ 8. Deputy Browne indicates that although he heard a "commotion" involving Plaintiff at 12:15 p.m., he did not observe that Plaintiff had received

"injuries that would warrant emergency medical care." Browne Affidavit, ¶¶ 7-8. He asserts that Plaintiff did not "request" medical care or treatment until 2:45 p.m. and that police transported him to the hospital emergency room at 3:05 p.m. *Id.* at ¶ 10. Deputy Browne further asserts that no employees at the Polk County jail denied Plaintiff any medical care, medicines, or food. *Id.* at ¶ 13.

Plaintiff brings claims pursuant to Section 1983, Section 1985, and 18 U.S.C. § 245 for the violation of various alleged rights under the Due Process Clause of the Fifth and Fourteenth Amendment, including the right to be free of illegal confinement and imprisonment, the right to be free from physical abuse, coercion and intimidation, and the right to receive timely necessary medical aid. Plaintiff also contends that Defendant Sheriff Davis unlawfully excluded him from his home in Polk County. Plaintiff brings state law claims for assault and battery and breach of duty against Defendants. Plaintiff seeks compensation for past and future physical and mental injuries, past and future medical costs, and past and future lost wages and employment opportunities. Plaintiff also seeks punitive damages.

## II.     Standard of Review

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©. The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*,

822 F.2d 1432, 1435 (6th Cir. 1987).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White*, 909 F.2d at 943-44; *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of the witnesses, and determine the truth of the matter. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *60 Ivy Street*, 822 F.2d at 1435-36. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 140 (6th Cir. 1997). If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *University of Cincinnati v. Arkwright Mut. Ins. Co.*, 51 F.3d 1277, 1280 (6th Cir. 1995); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).

### III.    Analysis

### A.    Section 1983 Claims

Section 1983 states in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.  To establish a claim pursuant to Section 1983, plaintiffs must demonstrate two elements: "(1) the defendants deprived [plaintiffs] of a right, privilege, or immunity secured to [them] by the United States Constitution or other federal law; and (2) the defendants caused the deprivation while acting under color of state law." *Cunningham v. Sisk*, 2003 WL 23471541, *5 (E.D. Tenn. 2003) (citing *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000)).  Only the first prong of the test is relevant in this action because Defendants do not dispute that they were acting under color of state law in performing their duties as law enforcement officers.

Section 1983 " 'creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere.' " *Alexander v. Haymon*, 254 F.Supp.2d 820, 830 (S.D. Ohio 2003) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000)).  Plaintiff alleges that the Defendants' instigation of the beating by the other inmates and their refusal to provide him with prompt medical treatment and adequate medical care following his treatment violated his Fifth and Fourteenth Amendment rights under the U.S. Constitution.  U.S. Const. amend. V; U.S. Const. amend. XIV.

### 1.    Polk County

The U.S. Supreme Court has held that municipalities are included as persons within the meaning of Section 1983, and therefore plaintiffs may sue municipalities for relief under the statute. *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A suit against an individual in his official capacity is "only another way of pleading an action against an entity of which the officer is an agent." *Id. See also St. John v. Hickey*, 411 F.3d 762, 775 (6th Cir. 2005).

A municipality may not be held liable under Section 1983 under a theory of respondeat superior. *Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. 2005) (citing *Monell*, 436 U.S. at 691). Municipalities are only liable under Section 1983 if they have an established policy or custom that causes the alleged injury. *See Monell*, 436 U.S. at 690.

> A municipality may be held liable only 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.' Furthermore, for municipal liability, there must be an 'affirmative link between the policy and the particular constitutional violation alleged.' The claimant has the burden of proof for establishing the existence of an unconstitutional policy and demonstrating the link between the policy and the alleged injuries at issue.

*Bennett*, 410 F.3d at 818-19 (quotations and citations omitted). Plaintiff must prove that his particular injuries were "incurred because of the execution of the policy or custom." *Cunningham*, 2003 WL 23471541 at *14 (citing *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 405 (1997); *Gregory*, 220 F.3d at 442; *Doe v. Claiborne County, Tennessee*, 103 F.3d 495 (6th Cir. 1996); *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).

This Court has noted that a custom must " 'be so permanent and well settled as to constitute a custom or usage with the force of law.' " *Cunningham*, 2003 WL 23471541 at *14

(quoting *Monell*, 436 U.S. at 691). Plaintiffs may establish a policy or custom in several ways. There may be an official policy that defendants promulgated. *Id.* Plaintiffs may also show a "pervasive custom or practice of which the [ ] lawmakers either know or reasonably should know." *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)). Plaintiffs can also establish the requisite policy or custom for purposes of Section 1983 by demonstrating that an official with policymaking authority has taken a single act relating to the subject matter or area at issue. *Cunningham*, 2003 WL 23471541 at *14 (citing *City of St. Louis v. Paprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Pembauer v. City of Cinncinnati*, 475 U.S. 469, 480-81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).

In this action Plaintiff does not provide any evidence in the record of a policy or widespread custom pertaining to encouraging inmates to injure or maim other inmates. Nor does Plaintiff present any indication that Polk County maintained a policy or custom to deny inmates or pre-trial detainees medical treatment and necessary medical care. It is Plaintiff's burden to produce evidence of a policy or custom, an injury, and a link between the policy and the injury. *See Bennett*, 410 F.3d at 818-19. Plaintiff has failed to do so here.

Plaintiff could also demonstrate liability under Section 1983 against Polk County by showing that it failed properly to train and supervise its employees. *Cunningham*, 2003 WL 23471541 at *15. Liability under this theory will exist only if Plaintiff "can prove that the [county's] failure to train evidences deliberate indifference to the rights of its inhabitants such that the failure to train in effect constitutes a governmental custom or policy within the *Monell* framework." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d

412 (1989)). The standard of "deliberate indifference" is a stringent one and requires proof that the defendants "disregarded a known or obvious consequence" of their actions. *Cunningham*, 2003 WL 23471541 at *15 (citing *Brown*, 520 U.S. at 410). Plaintiffs must show that the governmental entity was aware of the unconstitutional acts of its employees and failed to respond. *Cunningham*, 2003 WL 23471541 at *15 (citing *City of Canton*, 489 U.S. at 390-91).

Plaintiff provides no evidence of Polk County's failure to train its employees regarding proper medical treatment and medical care of inmates and pre-trial detainees. Nor does Plaintiff present evidence demonstrating that Polk County failed to train its employees regarding avoiding authorizing, inducing or inciting inmates to injure one another.

Conclusory allegations in an unverified complaint will not suffice to create a genuine issue of material fact on summary judgment. Fed. R. Civ. P. 56(e); *see also, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Plaintiff has failed to demonstrate a genuine issue of material fact regarding whether Polk County maintained an unlawful policy or custom or failed to train its employees. Plaintiff's Section 1983 claims against Polk County and the individual Defendants in their official capacities must, therefore, be **DISMISSED**.

### 2.     Individual Defendants

The individual Defendants argue that their alleged actions were protected by the doctrine of qualified immunity. The doctrine of qualified immunity "shields 'government officials performing discretionary functions . . . from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir. 2004) (quoting *Anderson v.*

*Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). The U.S. Supreme Court has established a two-part test for determining whether a law enforcement officer is entitled to qualified immunity. *See Lyons v. City of Xenia*, 417 F.3d 565 (6th Cir. 2005) (citing *Brosseau v. Haugen*, 543 U.S. 194, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004)). Under this test district courts must:

> consider whether 'the facts alleged show the officer's conduct violated a constitutional right.' . . . If the plaintiff can establish that a constitutional violation occurred, a court should ask 'whether the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition.'

*Lyons*, 417 F.3d at 571 (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). A right may be defined as clearly established by looking to Supreme Court precedent, then to Sixth Circuit precedent, then to other courts within the Sixth Circuit, and finally to decisions of other circuits. *See Gardenhire v. Schubert*, 205 F.3d at 311.

In addition, "[q]ualified immunity affords government officials an immunity from suit 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Burden v. Carroll*, 108 F. App'x 291, 293 (6th Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). This analysis should consider the legal rules that are clearly established at the time the defendants took the alleged actions. *See Rodgers v. Jabe*, 43 F.3d 1082, 1085 (6th Cir. 1995) (relying on *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987)). Once a defendant claims the affirmative defense of qualified immunity, the burden shifts to the plaintiff to demonstrate that the defendant is not entitled to the defense of qualified immunity. *Myers v. Potter*, 422 F.3d 347, 352 (6th Cir. 2005) (citing *Gardenhire*, 205 F.3d at 311).

When a defendant moves for summary judgment and asserts the defense of qualified immunity, the plaintiffs must "1) identify a clearly established right alleged to have been violated; and 2) establish that a reasonable officer in the defendant's position should have known that the conduct at issue was undertaken in violation of that right." *Pray v. City of Sandusky*, 49 F.3d 1154, 1159 (6th Cir. 1995) (citing *Johnson v. Estate of Laccheo*, 935 F.2d 109, 111 (6th Cir. 1991)).

Law enforcement officials will be entitled to qualified immunity " 'when their decision was *reasonable,* even if mistaken.' " *Pray*, 49 F.3d at 1158 (quoting *Castro v. United States*, 34 F.3d 106, 112 (2d Cir. 1994)). Further, " '[if] officers of reasonable competence could disagree on this issue, immunity should be recognized.' " *Pray*, 49 F.3d at 1158 (quoting *Malley v. Briggs*, 475 U.S. 335, 349, 106 S.Ct. 1092, 1100, 89 L.Ed.2d 271 (1986)).

The threshold issue to analyze is whether defendants violated a constitutional right. *Centanni v. Eight Unknown Officers*, 15 F.3d 587, 589 (6th Cir. 1994). The Plaintiff alleges that the Defendants violated his rights under the Due Process Clauses of the Fourteenth Amendment and the Fifth Amendment[1] to the Constitution in several different ways. U.S. Const. amend. XIV; U.S. Const. amend. V.

Plaintiff alleges that Defendants deliberately induced other inmates to break his jaw and intentionally placed him in a holding cell knowing that other inmates would attack him. The

---

[1] To the extent that Plaintiff attempts to raise claims under the Due Process Clause of the Fifth Amendment to the U.S. Constitution, such claims are without merit. As the Sixth Circuit has held, "[t]he Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government." *Bybee v. City of Paducah*, 46 F. App'x 735, 737 (6th Cir. 2002) (citing *Sturgell v. Creasy*, 640 F.2d 843, 850 (6th Cir. 1981)). Plaintiff's complaint does not allege any actions by the federal government; therefore, any claims for violation of the Fifth Amendment's Due Process Clause will be dismissed.

Eighth Amendment provides prisoners with a right to be free from violence at the hands of other inmates. *Price v. Sasser*, 65 F.3d 342, 345 (4th Cir. 1995) (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). Although the Eighth Amendment does not apply to pre-trial detainees, the Due Process Clause of the Fourteenth Amendment provides the same protections to pre-trial detainees that is provided to convicted prisoners pursuant to the Eighth Amendment. *Blanton v. State of Indiana*, 91 F.3d 146 (7th Cir. 1996) (citing *Bell v. Wolfish*, 441 U.S. 520, 534-35, 545 (1979)). As the Supreme Court and the Sixth Circuit have held, "[t]he Eighth Amendment 'imposes duties on [prison] officials, who must provide humane conditions of confinement; [these] officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

The U.S. Supreme Court has defined the parameters of the right to be free from violence by other inmates. In *Farmer v. Brennan*, the Court held that "'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'" 511 U.S. 825, 833 (1994). The Court explained the parameters of the scope of this duty:

> First, "the deprivation alleged must be, objectively, 'sufficiently serious' . . . For a claim . . . based on the failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Second, the prison official must have acted with a "sufficiently culpable state of mind. In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety."

*Price*, 65 F.3d at 345 (quoting *Farmer*, 511 U.S. at 834). As the Sixth Circuit noted in *Watkins v. City of Battle Creek*:

> Deliberate indifference is not mere negligence. Deliberate indifference requires

that the defendants knew of and disregarded a substantial risk of serious harm . . . This standard is subjective. It is not enough that there was a danger of which an officer should objectively have been aware. '[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' If an officer fails to act in the face of an obvious risk of which he should have known but did not, the officer has not violated the Eighth or Fourteenth Amendments.

273 F.3d 682, 686 (6th Cir. 2001)(quoting *Farmer v. Brennan*, 511 U.S. at 837) (citations omitted).

The Plaintiff further alleges that Defendants were deliberately indifferent to his serious medical needs. Plaintiff not only claims that Defendants denied him immediate medical care pertaining to his broken jaw, he further claims that Defendants denied him prescription medications and appropriate food following treatment on his broken jaw. As the U.S. Supreme Court and the Sixth Circuit have held, "[t]he Eighth Amendment does not apply to pretrial detainees. Under the Fourteenth Amendment Due Process Clause, however, pretrial detainees have a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." *Watkins*, 273 F.3d at 686 (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).

A claim for failure to provide medical treatment under Section 1983 requires a plaintiff to demonstrate that a defendant "acted with 'deliberate indifference to serious medical needs.'" *Watkins*, 273 F.3d at 686 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). As the U.S. Supreme Court held in *Estelle v. Gamble*,

deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference

-15-

to a prisoner's serious illness or injury states a cause of action under § 1983.

429 U.S. at 104-05) (quotation and footnotes omitted).

Further,

[a] claim for the deprivation of adequate medical care "has two components, one objective and one subjective." "To satisfy the *objective component*, the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" "To satisfy the *subjective component*, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk."

*Johnson*, 398 F.3d at 874 (quoting *Comstock v. McCrary*, 273 F.3d 693, 702-03 (6th Cir. 2001)).

In analyzing the objective component of a sufficiently serious medical need, the Sixth Circuit has explained that:

"[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person," this obviousness is itself sufficient to satisfy the objective component of the adequate medical care test. However, if the need involves "minor maladies or non-obvious complaints of a serious need for medical care," the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment."

*Johnson*, 398 F.3d at 874 (quoting *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004) and *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001)).

In this action Plaintiff brings claims against four individuals, Sheriff Davis, Mr. Copeland, Deputy Sheriff Burris, and Deputy Browne. The Court will address his claims against Defendants Davis and Copeland first. Plaintiff presents no evidence that Defendant Davis was deliberately indifferent to a substantial risk of serious harm. Plaintiff does not allege that Sheriff Davis was present at the Polk County jail before, during, or immediately following his injury. Nor does Plaintiff allege that Sheriff Davis incited the other inmates to attack Plaintiff or participated in the alleged events at the jail in any other way. Plaintiff alleges that some

unknown County employees may have misunderstood Sheriff Davis when he indicated that they should not let Plaintiff see a doctor if he was attempting to fake a physical or mental illness. This is not sufficient to demonstrate an issue of fact regarding Sheriff Davis' deliberate indifference to Plaintiff's safety. Nor does Plaintiff suggest that Sheriff Davis had any knowledge of or any role in providing treatment to Plaintiff immediately after his injury or in the days immediately following the injury. Plaintiff has not demonstrated a genuine issue of material fact regarding whether Sheriff Davis was deliberately indifferent to his safety and his medical needs and follow-up treatment. Thus, Plaintiff has not shown that Sheriff Davis violated his constitutional rights; therefore, Sheriff Davis' actions are protected by qualified immunity. This Court will **DISMISS** Plaintiff's Section 1983 claims against Sheriff Davis.

Although Plaintiff alleges that Mr. Copeland was present at the jail during and immediately after the altercation involving Plaintiff, Mr. Copeland has died since the commencement of this action. Defendants filed a suggestion of death pursuant to Fed. R. Civ. P. 25(a) on January 30, 2007. [Court Doc. No. 33]. Ninety days have passed since the filing of the suggestion of death, and Plaintiff has not filed a motion for substitution. Therefore, pursuant to Fed. R. Civ. P. 25(a)(1) this Court will **DISMISS** the Section 1983 claims, as well as all other claims against Mr. Copeland.

The Court now turns to the behavior in which Plaintiff alleges Deputy Sheriff Burris and Deputy Browne engaged. Defendants urge this Court to disregard the facts alleged by both Plaintiff and Mr. Murray as hearsay, unauthenticated, not based on personal knowledge, and in Plaintiff's case, potentially made by an incompetent individual. *See* Fed. R. Civ. P. 56. It is true that courts should not consider hearsay evidence on a motion for summary judgment. *See Wiley*

*v. United States*, 20 F.3d 222, 226 (6th Cir. 1994). However, if an exception to the hearsay rule applies, the evidence may be considered on summary judgment. *See e.g.*, *Carter v. University of Toledo*, 349 F.3d 269, 274 (6th Cir. 2003). An admission by a party opponent and by that party's agent or servant is not hearsay. *See* Fed. R. Evid. 801(d)(2); *Peyton v. Kellermeyer Co.*, 115 F. App'x 825, 829 n.2 (6th Cir. 2004). Burris' statements may be construed as admissions by a party opponent. Further, Deputy Browne's statements may be construed as admissions by an agent or servant because Burris supervised Browne.

Statements against interest also constitute an exception to the hearsay rule. Fed. R. Evid. 804(b)(3); *see Gilmore v. Davis*, 185 F. App'x 476, 484 (6th Cir. 2006). Further, it is possible that Burris' statement might be admissible for a reason other than the truth of the matter asserted, such as to demonstrate his motivation to intimidate Plaintiff. *See* Fed. R. Evid. 801(c).

Defendants also assert that this Court has questioned Plaintiff's mental competency in a criminal action in this Court. Any questions regarding Plaintiff's competency do not bear on the admissibility of his statement, but rather, relate to Plaintiff's credibility. This Court does not weigh issues of credibility at the summary judgment stage. *Anderson*, 477 U.S. at 252. Thus, the Court will consider the allegations made in Plaintiff's interrogatory response and Mr. Murray's affidavit.

The Court concludes that the events alleged demonstrate a genuine issue of material fact regarding whether Deputy Sheriff Burris and Deputy Browne were deliberately indifferent to Plaintiff's safety in violation of his Fourteenth Amendment rights. Plaintiff alleges that Burris informed him that he would be beaten, and he also provides an affidavit from a Polk County jailor, Mr. Murray, supporting this allegation. Deputy Browne apparently informed Mr. Murray

that Burris had ordered Browne to tell the inmates to beat Plaintiff.  Murray Affidavit, ¶ 3.

The Court further concludes that Plaintiff has established a genuine issue of material fact regarding whether Defendants Burris and Browne deliberately withheld medical aid and follow-up treatment.  Both Plaintiff and Mr. Murray allege that Plaintiff's injuries were obvious because Plaintiff was bleeding profusely.  The injuries were severe enough to bring criminal charges against the inmates Stratton, Quarles, and Lane; thus, there is support even without Plaintiff's and Murray's evidence that the injuries were severe and obvious.  [Court Doc. No. 31-2, Davis Affidavit, ¶ 10].  This evidence satisfies the objective requirement of the test for deliberate indifference.

The Court notes that Defendants Burris and Browne carefully craft their affidavits to indicate that Plaintiff was taken to the hospital shortly after he "requested" medical aid.  Deputy Browne admits that the transport to the hospital was offered only several hours after he heard the fray in the jail cell.  [Court Doc. No. 31-4, Browne Affidavit, ¶¶ 7-9].  Thus, even from Defendants' version it is clear that Plaintiff waited about two and one-half hours after he was injured before Defendants would arrange to have him transported to the hospital.  Plaintiff alleges he was bleeding profusely and had blood all over his orange prison uniform.  These alleged facts indicate that Defendants Browne and Burris should have been aware of Plaintiff's need for medical aid, but chose to ignore the risk to the Plaintiff.  This satisfies the subjective test for deliberate indifference.  Plaintiff's and Murray's version of the events, combined with Defendants' admissions in their affidavits regarding the timing of providing aid, creates a genuine issue of material fact regarding whether Defendants Burris and Browne were deliberately indifferent to Plaintiff's need for medical attention.

Although the Court does not have much evidence regarding Plaintiff's hospital treatment or the prescribed medications and special diet Plaintiff required following his visits to the doctor, the Court concludes that Plaintiff's allegations of Defendants' refusal to provide him with necessary prescriptions and an appropriate diet creates a genuine issue of material fact regarding whether Defendants Burris and Browne were deliberately indifferent to Plaintiff's necessary follow-up treatment needs.

Plaintiff has provided evidence sufficient to raise a genuine issue of material fact regarding Burris' and Browne's qualified immunity. Defendant's actions, taken in the light most favorable to Plaintiff, violated Plaintiff's Fourteenth Amendment rights to safety and medical treatment. These rights were clearly established by Supreme Court precedent at the time of the alleged incidents. Therefore, the Court will **DENY** Defendants Burris' and Browne's motion for summary judgment on Plaintiff's Section 1983 claims.

Plaintiff also alleges that Defendants subjected him to unlawful confinement. He appears to allege that Sheriff Davis participated in subjecting him to prison for longer than was warranted. The Sixth Circuit has explained:

> In *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court ruled that a state prisoner cannot bring a § 1983 action directly challenging his confinement until and unless the reason for his continued confinement has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or has otherwise been called into question by a federal court's issuance of a writ of habeas corpus. A claim challenging confinement must be dismissed regardless of whether the plaintiff seeks injunctive or monetary relief. . . . Moreover, *Heck* applies to suits filed by pretrial detainees.

*Adams v. Morris*, 90 F. App'x 856, 858 (6th Cir. 2004) (citing *Alvarez-Machain v. United States*, 107 F.3d 696, 700-01 (9th Cir. 1996); *Hamilton v. Lyons*, 74 F.3d 99, 102-03 (5th Cir. 1996))

(other citations omitted); *see also, Thomas v. Pugh*, 9 F. App'x 370, 372 (6th Cir. 2001).

It is not clear precisely what Plaintiff alleges was unlawful confinement, his confinement before his injury, after his injury, or his alleged confinement after he allegedly refused to accede to Sheriff Davis' demand that he stay out of Polk County.  However, Plaintiff has not presented this Court with any evidence of the reason for his confinement being reversed on appeal, declared invalid by a state court, expunged by executive order or otherwise called into question.  Thus, this Court will **DISMISS** Plaintiff's claim for unlawful confinement against all Defendants.        **B.        Section 1985 Claims**

Section 1985 protects individuals and groups from conspiracies to interfere with civil rights.  42 U.S.C. § 1985.  Part one of Section 1985 protects officers seeking to perform the duties of their office.  42 U.S.C. § 1985(1).  Part two protects parties to lawsuits, witnesses and jurors.  42 U.S.C. § 1985(2).  Part three of Section 1985 protects citizens from groups of persons conspiring to deprive them of civil rights such as voting.  42 U.S.C. § 1985(3).  Plaintiff fails to brief this claim in his opposition to Defendants' motion for summary judgment.  This Court can only surmise the Plaintiff is attempting to bring a claim pursuant to 42 U.S.C. § 1985(3) since the facts alleged by Plaintiff do not fit the other realms of protection pursuant to Section 1985.

The Sixth Circuit has defined the elements of Section 1985(3) claim:

A § 1985(3) cause of action for conspiracy requires that the plaintiff prove four elements: (1) the existence of a conspiracy; (2) the purpose of the conspiracy was to deprive any person or class of persons the equal protection or equal privileges and immunities of the law; (3) an act in furtherance of the conspiracy; and (4) injury or deprivation of a federally protected right.  We have held that § 1985(3) applies only where the discrimination was based on race or membership in another class comprising 'discrete and insular minorities that receive special protection under the Equal Protection Clause because of inherent personal characteristics.'

*Royal Oak Entertainment, LLC v. City of Royal Oak*, 205 F. App'x 389, 399 (6th Cir. 2006) (citing *Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.*, 32 F.3d 989, 993 (6th Cir. 1994) and quoting *Volunteer Med. Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 224 (6th Cir. 1991)).

Plaintiff's Section 1985 claim must fail because he has not demonstrated any of the requisite elements, and even if he demonstrated that Defendants participated in some sort of conspiracy, he has not demonstrated that he is a member of a discrete and insular minority warranting protection under the Equal Protection Clause. This Court will therefore **DISMISS** Plaintiff's claims under Section 1985 against all Defendants.

### C. 18 U.S.C. § 245 Claims

18 U.S.C. § 245 protects individuals performing federally protected activities, such as voting, attending public schools, applying for employment, traveling in interstate commerce or serving as a juror, from injury, intimidation or the interference with such rights. The statute is a criminal statute "which does not give rise to any civil cause of action." *Marshall v. Johnson*, 2005 WL 1214254 *5 (W.D. Ky. 2005) (citing *Dugar v. Coughlin*, 613 F.Supp. 849, 852 n.1 (S.D.N.Y. 1985)). Moreover, only state and federal prosecutors can bring a criminal complaint against Defendants for a violation of 18 U.S.C. § 245. *See Marshall*, 2005 WL 1214254 at *5. Therefore, Plaintiff's civil claims based on an alleged violation of 18 U.S.C. § 245 must be **DISMISSED**.

### D. State Law Claims

Plaintiff brings claims against Defendants for alleged assault and battery and negligence.[2] Plaintiff also appears to bring a state law claim for unlawful exclusion from property against Sheriff Davis. Defendants request that this Court decline to exercise supplemental jurisdiction over the state law claims in the instant action. Defendants argue that under the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. §§ 29-20-101 et seq. ("TGTLA"), Tennessee state courts retain exclusive jurisdiction over claims arising under the TGTLA. Tennessee Code Annotated § 29-20-307 provides that "[t]he circuit courts shall have exclusive original jurisdiction over any action brought under this chapter and shall hear and decide such suits without the intervention of a jury." The TGTLA requires that all claims must be brought in "strict compliance" with the Act. Tenn. Code Ann. § 29-20-201(c). The Act provides that "[e]xcept as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary." Tenn. Code Ann. § 29-20-201(a). The TGTLA removes immunity for negligent actions of employees unless such actions were related to discretionary functions or certain enumerated intentional torts. Tenn. Code Ann. § 29-20-205. *See Hisel v. City of Clarksville*, 2007 WL 700983 *14 (M.D. Tenn. Mar. 2, 2007) (noting that pursuant to the TGTLA, municipalities are "'generally subject to suit for civil claims sounding in

_____

[2] Count five of Plaintiff's complaint claims that "Defendants Deputies [sic] breached a duty owed to Plaintiff." Although it is not entirely clear what claim Plaintiff is alleging here, the Court assumes that Plaintiff's claim is one for common law negligence. To state a claim for negligence, Plaintiff must prove: a duty of care, conduct falling beneath the appropriate standard of care; an injury; causation; and proximate cause. *Kinningham v. State*, 2001 WL 1089501 *1 (Tenn. Ct. App. Sept. 18, 2001).

negligence unless the negligence claims 'arise out' of the exceptions provided in Tenn. Code Ann. § 29-20-205'") (quoting *Rhodes v. City of Chattanooga*, 2005 WL 2647921 *8 (E.D. Tenn. Oct. 14, 2005)).

In *Beddingfield v. City of Pulaski, Tennessee* the district court declined to exercise jurisdiction over pendent state law claims of wrongful death and violation of the Tennessee Constitution "in the face of the limitations upon suability specified in Tenn. Code Ann. § 39-20-307." 666 F.Supp. at 1064-66 (M.D. Tenn.), *rev'd on other grounds*, 861 F.2d 968 (6th Cir. 1988). 28 U.S.C. § 1367(c) provides that "district courts may decline to exercise supplemental jurisdiction over a claim . . . . if – . . . (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). The Sixth Circuit has determined that "the Tennessee legislature expressed a clear preference that TGTLA claims be handled by its own state courts. This unequivocal preference of the Tennessee legislature is an exceptional circumstance for declining jurisdiction." *Gregory*, 220 F.3d at 446.

In *Gregory*, the Sixth Circuit affirmed the magistrate judge's dismissal of the state law claims against a law enforcement officer acting in his official capacity. 220 F.3d at 446. Similarly, in *Maxwell v. Conn* the Sixth Circuit affirmed the district court's decision to dismiss the plaintiff's pendent state law claims against defendant sheriff department employees without prejudice based on the exclusivity provision in the TGTLA. 893 F.2d 1335, 1990 WL 2774 *3-4 (6th Cir. 1990). *See also, Millender v. Bowman*, 2004 WL 2238526 *3 (W.D. Tenn. Aug. 25, 2004); *Spurlock v. Whitney*, 971 F.Supp. 1166, 1185 (M.D. Tenn. 1997); *Timberlake v. Benton*, 786 F.Supp. 676, 696 (M.D. Tenn. 1992).

In some cases district courts have declined to adhere to the exclusive jurisdiction provision of the TGTLA due to federal jurisdiction existing on the basis of diversity of citizenship. *See e.g.*, *Metaljan v. Memphis-Shelby County Airport Authority*, 752 F.Supp. 834, 836-37 (W.D. Tenn. 1990). However, in the instant action, Plaintiff has not shown that this Court's jurisdiction over the state law claims is based on diversity of citizenship. Because the TGTLA provides that exclusive jurisdiction for claims arising under the Act rest with Tennessee state courts, this Court will **DISMISS WITHOUT PREJUDICE** the Plaintiff's state law claims against Polk County and the other Defendants in their official capacities.

Plaintiffs have also brought state law claims against the individual Defendants in their individual capacities. As the district court noted in *Timberlake*, the TGTLA "addresses the liability of governmental entities only. Its jurisdictional limitations do not apply to persons sued individually." 786 F.Supp. at 697.

The TGTLA provides that "[n]o claim may be brought against an employee or judgment entered against an employee for damages for which the immunity of the governmental entity is removed by this chapter . . ." Tenn. Code Ann. § 29-20-310(b). The Act also provides that:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:
> (1) The exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused;
> (2) false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of the right of privacy, or civil rights; . . .

Tenn. Code Ann. § 29-20-205. The grant of immunity for certain intentional torts applies only to the torts specifically enumerated in the statute. *Limbaugh v. Coffee Medical Services*, 59 S.W.3d

73, 84 (Tenn. 2001).

Where the TGTLA specifically removes immunity of a governmental entity for certain negligent acts and omissions, courts have held that the governmental employee may not be sued individually for the same tort pursuant to Tenn. Code Ann. § 29-20-310(b). *See Alexander v. Newman*, 345 F.Supp.2d 876, 886 (W.D. Tenn. 2004) (dismissing negligence claims against officers sued in their individual capacities); *see also Erwin v. Rose*, 980 S.W.2d 203, 206 (Tenn. Ct. App. 1998). Because the TGTLA does not specifically grant immunity to Polk County for civil claims of negligence, this Court will **DISMISS** Plaintiff's claim against the individual Defendants for negligence pursuant to Tenn. Code Ann. § 29-20-310(b). This dismissal will be without prejudice, however, in case a Tennessee court determines that Polk County is immune from suit for the state claim of negligence against the individual Defendants pursuant to Tenn. Code Ann. § 29-20-310(c).

The Court will **DISMISS** with prejudice Plaintiff's claims against the individual Defendants for assault and battery because Plaintiff has failed to allege facts indicating that any of the individual Defendants assaulted or committed a battery on Plaintiff. Under Tennessee law a civil cause of action for assault is defined as "'any act tending to do corporal injury to another, accompanied with such circumstances as denote at the time an intention, coupled with the present ability, of using actual violence against that person.'" *Vafaie v. Owens*, 1996 WL 502133 *3 (Tenn. Ct. App. Sept. 6, 1996) (quoting *Huffman v. State*, 292 S.W.2d 738 (Tenn. 1956) (overruled on other grounds by *State v. Irvin*, 603 S.W.2d 121 (Tenn. 1980)); *see also*, *Lewis v. Metropolitan General Sessions Court for Nashville*, 949 S.W.2d 696, 703 (Tenn. Cr. App. 1996). A battery is defined as "a touching of the person [of an individual], or something intimately

associated with, or attached to, his person, for an unlawful purpose." *Lewis*, 949 S.W.2d at 703 (quoting *Huffman*, 292 S.W.2d at 742). Plaintiff alleges that three other inmates inflicted corporal injury and unlawful touching upon him, not Defendants Burris, Browne, Copeland, or Davis. Because the individual Defendants at issue here did not actually touch or inflict physical injury Plaintiff in an unlawful manner, these claims will be **DISMISSED**.

To the extent Plaintiff seeks to bring a common law claim for unlawful exclusion from his home against Sheriff Davis individually, and not against Polk County or Sheriff Davis in his official capacity, this Court will **DISMISS** such claim. Plaintiff has provided no evidence supporting his claim that he was unlawfully excluded from his home. He states that a Polk County state judge imposed the condition as part of his bond requirement. There is nothing in the record supporting Plaintiff's allegations or demonstrating that Sheriff Davis was responsible for an unlawful exclusion from Polk County.

### IV.    Conclusion

After reviewing the record and the applicable law, the Court concludes that a genuine issue of material fact exists regarding Plaintiff's claims brought pursuant to 42 U.S.C. § 1983 against Deputy Sheriff Burris and Deputy Browne in their individual capacities. Defendants' motion for summary judgment on these claims against Defendants Burris and Browne will be **DENIED**. The parties should be prepared to proceed to trial on Plaintiff's claims against Deputy Sheriff James T. Burris and Deputy Carl Browne in their individual capacities under 42 U.S.C. § 1983 for violation of his Fourteenth Amendment rights to safety and medical aid while in prison.

The Court will **DISMISS** all claims against Bob Copeland pursuant to Fed. R. Civ. P. 25(a)(1).

The Court further concludes that no genuine issue of material fact exists regarding Plaintiff's claims against Polk County and Sheriff Davis in his individual capacity pursuant to 42 U.S.C. § 1983. No genuine issue of material fact exists regarding Plaintiff's claims against all Defendants pursuant to 42 U.S.C. § 1985 and 18 U.S.C. § 245. In addition, no genuine issue of material fact exists regarding Plaintiff's Section 1983 claims against Sheriff Davis, Deputy Sheriff Burris, and Deputy Browne in their official capacities. The Court will **DISMISS WITH PREJUDICE** Plaintiff's Section 1983 claims against Polk County and Sheriff Davis, in his official and individual capacities, and the other Defendants in their official capacities. The Court will **DISMISS WITH PREJUDICE** Plaintiff's Section 1985 and 18 U.S.C. § 245 claims against all Defendants.

Plaintiff's state law claims of assault, battery, and negligence against Polk County will be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction. Plaintiff's state law claims of negligence will be **DISMISSED WITHOUT PREJUDICE** against Sheriff Davis, Deputy Sheriff Burris, and Deputy Browne. Plaintiff's state law claims of assault and battery against Sheriff Davis, Deputy Sheriff Burris, and Deputy Browne in their individual capacities will be **DISMISSED WITH PREJUDICE**. Plaintiff's state law claim of unlawful exclusion against Sheriff Davis in his individual capacity will be **DISMISSED WITH PREJUDICE**. Defendants' motion for summary judgment will be **GRANTED IN PART** and **DENIED IN PART**.

A separate order will enter.

_____*/s/ R. Allan Edgar*_____
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE
